UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STEELWORKERS AND                                    CIVIL ACTION
ITS LOCAL 275

VERSUS                                                                 14-273-SDD-SCR

OXBOW CALCINING, LLC

## RULING

This matter is before the Court on cross motions for summary judgment filed by each of the parties.[1] The Court has considered the respective *Oppositions*[2] and *Reply Briefs*.[3] For the following reasons, United Steelworkers and its Local 275's *Motion* shall be granted and Oxbow Calcining, LLC's *Motion* shall be denied.

**I.   BACKGROUND**

United Steelworkers and its Local 275 (collectively "Union") and Oxbow Calcining, LLC (hereinafter "Oxbow") are parties to a Collective Bargaining Agreement (2013 CBA) that is effective from April 25, 2013, through March 31, 2016.[4] The Union represents certain hourly employees[5] at Oxbow's Baton Rouge processing plant.[6] Prior to the 2013 CBA, the Union and Oxbow had been parties to another Collective Bargaining Agreement (2010 CBA) that had been effective from April 1, 2010 through

---

[1] Rec. Doc. 10 and Rec. Doc. 12.
[2] Rec. Doc. 16 and Rec. Doc. 17.
[3] Rec. Doc. 21.
[4] Rec. Doc. 10-3, p. 2, ¶3; Rec. Doc. 16-1, p. 2, ¶3.
[5] The Union "represents the production, laboratory and maintenance employees of the Company at the Company's Baton Rouge facilities for the purpose of collective bargaining over wages, hours and other terms and conditions of employment."  Rec. Doc. 10-3, p. 1, ¶2; Rec. Doc. 16-1, p. 2, ¶2.
[6] Oxbow's plant "receives raw petroleum coke from oil refineries" and "then processes that coke by removing moisture through a series of kilns and then sells the end product." Rec. Doc. 10-3, No. 1, p. 1, ¶1.

27779                                                  1

March 31, 2013.  Notably, the 2010 CBA provided that "[u]nder the 401(k) plan currently in effect, the Company matches fifty percent (50%) of the employees' contributions up to a maximum of three percent (3%) of salary."[7]  In the 2013 CBA the parties agreed to amend the foregoing provision effective 2014, whereby Oxbow would match 50% of the employee's eligible contributions up to 10% of the employee's salary. The application and interpretation of the 2013 CBA language is the point of contention between the parties today.[8]  The question before the Court is whether this controversy is subject to arbitration.

The Union contends that the amended language requires Oxbow to contribute $1.00 in matching funds for every $2.00 an employee contributes to his or her 401(k) *until Oxbow's matching funds amount to 10% of the employee's salary*.[9]  On the other hand, Oxbow contends that the language requires that Oxbow match 50% of the employee's contribution to his or her 401(k) *up to a maximum of 10% of the employee's salary*.[10]  Under Oxbow's interpretation, an employee who contributed 10% of his or her salary to the 401(k) Plan would receive a company match of 5%.[11]  In the event an employee were to contribute more than 10% of his or her salary, Oxbow's maximum company match would remain at 5% because the 50% company match only applies to

---

[7] Rec. Doc. 12-5, p. 34.
[8] In its *Complaint*, the Union specifically alleges: "On or about January 14, 2014 the Union filed Grievance Number WS 011414 disputing the Company's interpretation and application of Article XXXII.C."  In its Memorandum in Support of its Motion for Summary Judgment, the Union goes into great detail articulating how its "view of the CBA's 401(k) match language" differs from Oxbow's interpretation and application of the language.  Rec. Doc. 12-1, pp. 4-5.
[9] In application, Oxbow achieved its obligations under the 2010 CBA by "contributing $1 for every $2 contributed by the employee until the employee had contributed up to six percent of his or her salary, at which point [Oxbow's] matching contributions totaled three percent of the employee's salary."  Rec. Doc. 12-3, p. 2, ¶8.
[10] Rec. Doc. 12-8, p.2; Rec. Doc. 10-4, p. 1.
[11] Rec. Doc. 12-12, p. 2; Rec. Doc. 12-8, p.2; Rec. Doc. 10-4, p. 1.

27779                                                                 2

the first 10% employee contribution.[12] Due to the parties' differing positions, the Union filed a grievance pursuant to the 2013 CBA Grievance and Arbitration procedures.[13] Oxbow, however, asserted that the Union's grievance was not subject to the 2013 CBA Grievance and Arbitration procedures. Instead, Oxbow argued that because this is a claim by union members seeking benefits under the Oxbow 401(k) Plan, the dispute falls within the express purview of Article IX of the 401(k) Plan which requires such claims be submitted to the Plan Administrator. Unable to engage Oxbow in an arbitration process under the CBA, the Union filed the pending lawsuit pursuant to Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 142, *et seq*.[14]

The parties have now presented the Court with cross-motions for summary judgment. The Union seeks summary judgment on its claim that its grievance falls within the purview of the CBA's Grievance and Arbitration procedures. Oxbow claims summary judgment on the Union's claims is warranted because the claims fall beyond the scope of the CBA. Oxbow contends that the underlying claims and grievance are really challenges to the Plan Administrator's interpretation and application of the 401(k) Plan; therefore, such a dispute must follow the administrative appeals process set forth in the 401(k) Plan.

---

[12] Rec. Doc. 12-8, p. 2.
[13] Rec. Doc. 12-9. The Union's Grievance was given Grievance Number "WS011414." In its Grievance, the Union described the "Nature of Complaint or Grievance" as follows: "The Union was notified on January 3, 2014 that the Company would limit its contribution to an employee's 401(k) Plan account to 5% of the employee's 10% contribution. The Collective Bargaining Agreement negotiated in 2013 states that 'the company will match fifty percent (50%) of the employees' contribution up to a maximum of ten percent (10%) of salary as provided in the Plan." The Union explained that it sought the following "Remedy": "The 401(k) Plan provisions are clear and unambiguous. The Company must comply with the negotiated language. Further, the Company must make whole any employee(s) that are adversely impacted because of the Company's non-compliance with the 401(k) Plan contributions."
[14] Rec. Doc. 1.

## II. LAW

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[16] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[17] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[18] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[19]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[20] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[21] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party

---

[15] Fed.R.Civ.P. 56(a) (West 2015).
[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).
[17] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323, 106 S.Ct. at 2552)).
[18] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[19] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, at 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[20] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[22]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without "any significant probative evidence tending to support the complaint."'"[23]

### B. Arbitration Under the Labor Management Relations Act ("LMRA")

As previously noted, this case arises under Section 301 of the LMRA.  One of the basic tenets of interpreting arbitration clauses in labor-management contracts "is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[24]  "[A] party that objects to arbitration because it did not agree to arbitrate the disputed issue is entitled to a judicial determination as to whether the collective bargaining agreement creates a duty for the parties to arbitrate the grievance."[25]  However, "where the contract contains an arbitration clause, there is a presumption of arbitrability."[26]  The Supreme Court has instructed that the presumption applies "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."[27]  Nevertheless, "the policy that favors resolving doubts in favor of arbitration cannot serve to stretch a contractual

---

[22] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[23] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).
[24] *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)(quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)) (hereinafter *AT&T*).
[25] *PDG Chem. Inc. v. Oil, Chem. and Atomic Workers*, 164 F.Supp.2d 856, 860 (E.D.Tex. 2001)
[26] *AT&T*, 475 U.S. at 650.
[27] *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

clause beyond the scope intended by the parties or authorize an arbiter to disregard or modify the plain and ambiguous provisions of the agreement."[28]

Recognizing the limited roles courts serve when deciding issues of arbitrability, the Fifth Circuit in *Paper, Allied-Industrial, Chemical and Energy Workers International Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, instructed that "[t]he court's function is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate."[29]  The Fifth Circuit warned that courts should "[i]n no way…consider the merits of a claim.  Rather, the court 'is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.'"[30]  The Fifth Circuit has further explained that if the presumption of arbitrability applies, it may be rebutted "only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration.'"[31]  When "interpreting an arbitration agreement, the 'ordinary rules of construction' apply, and extrinsic evidence is only to be considered 'where the contract language is ambiguous as to arbitrability."[32]

---

[28] *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 412 (5th Cir. 2014)(quoting *Smith v. Transp. Workers Union of Am., AFL-CIO Air Transport Local 556*, 374 F.3d 372 (5th Cir. 2004)(citation and internal quotation marks omitted)).

[29] *Paper, Allied-Industrial, Chemical and Energy Workers International Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 619 (5th Cir. 2006)(quoting *Oil Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987)).

[30] *Id.* (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)).

[31] *Id.* at 620 (quoting *Commc'ns Workers of Am. v. Southwestern Bell Tel. Co.*, 415 F.2d 35 (5th Cir. 1969)).

[32] *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union v. Noranda Alumina, LLC*, No. 13-5059, 2015 WL 858589, at *15 (E.D.La. Feb. 27, 2015)(quoting *Paper, Allied-Indus., Chem. and Energy Workers Int'l*, 449 F.3d at 620)).

**III.   ANALYSIS**

The parties in this case disagree about whether the arbitration clause within the 2013 CBA applies to the present dispute.  The Union maintains that "the presumption of arbitrability applies here because [Article XXV of] the CBA contains a broad arbitration provision."[33]  Citing Article XXXII.E of the CBA, Oxbow maintains that the parties never agreed to arbitrate disputes pertaining to the 401(k) Plan. Oxbow contends that the real dispute concerns the Plan Administrator's interpretation and application of benefits under the Plan, hence, "the only recourse available to eligible employees" is through the Plan's grievance process, or Article IX of the 401(k) Plan.[34]

The relevant provisions of the CBA at issue are:

Article XXV of the 2013 CBA sets forth the Arbitration procedure in pertinent part as follows:

> A. Any dispute, difference, or grievance between the parties arising under the terms of this Agreement, but not including any desired or proposed change in the terms of this Agreement that shall not have been satisfactorily settled by the operation of the grievance procedure outlined in Article XXIV above, may be submitted to arbitration by the Union by giving written notice to [Oxbow] within thirty (30) days after [Oxbow's] third step written answer.[35]

****

Article XXXII of the 2013 CBA entitled Insurance, Pension, Retirement and Savings (401(k)), and Other Benefit Plans, provides as follows:

> C. The parties agree to comply with and be bound by all of the terms and provisions of the Retirement Savings Plan (401(k)) as currently in effect and as may be amended from time to time.  [Oxbow] will amend the current 401(k) to provide that effective in 2014 [Oxbow] will match

---

[33] Rec. Doc. 12-1, p. 8.
[34] Rec. Doc. 17, p. 4.
[35] Rec. Doc. 12-4, p. 32.

27779                                                    7

> fifty percent (50%) of the employees' eligible contributions up to a maximum of ten percent (10%) of salary....[36]
>
> E. The information in this Article is a summary of Plan benefits. If there is a conflict between this document and any of the Plan documents, the terms of the Plan document govern.[37]

### A. Presumption of Arbitrability

The parties do not dispute that the 2013 CBA contains an express agreement to arbitrate. Article XXV(A) of the 2013 CBA specifically states that "[a]ny dispute, difference or grievance between the parties arising under the terms of this Agreement,…that shall not have been satisfactorily settled by the operation of the grievance procedure outlined in Article XXIV … may be submitted to arbitration by the Union by giving written notice to [Oxbow] within thirty (30) days after [Oxbow's] third step written answer."[38] Article XXV(B) establishes the procedure for selecting an "impartial arbitrator" whose decision "shall be final and binding upon both parties."[39] In the Supreme Court decision, *AT & T Technologies, Inc. v. Communications Workers of America*, the arbitration clause at issue required arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder."[40] The *AT&T* Court held that the presumption of arbitrability was "particularly applicable" in cases where the arbitration clause at issue was "as broad" as the one before it.[41] The scope of the arbitration clause in this case is similarly broad

---

[36] Rec. Doc. 12-4, p. 36.
[37] Rec. Doc. 12-4, p. 37.
[38] Rec. Doc. 12-4, p. 32.
[39] Rec. Doc. 12-4, p. 32.
[40] *AT&T*, 475 U.S. at 650.
[41] *Id.* ("Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder.'")

27779                                                         8

inasmuch as it applies to "any dispute, difference or grievance."[42]  Accordingly, the Court finds that the presumption of arbitrability applies here.

### B. Has Oxbow Rebutted the Presumption of Arbitrability?

In response, Oxbow argues that the "presumption of arbitrability is overcome by the clear language of both the CBA and The [401K] Plan" and the Fifth Circuit's decision in *Local Union No. 4-449, Oil, Chem. & Atomic Workers Union, AFL-CIO v. Amoco Chem. Corp. (*hereinafter *"Amoco').*[43]  Oxbow contends that *Amoco* is directly on point and controls the outcome of this case.  The Union disagrees arguing that there is no express provision that exempts grievances over the 2013 CBA's 401(k) provision from the CBA's broadly-defined arbitration procedure.  The Union further contends that the recent Fifth Circuit decision, *Houston Refining, L.P. v. United* P*aper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; United Steel Workers Local Union No. 13-227*, supports its position and requires arbitration of the Grievance under the 2013 CBA.[44]

In *Amoco*, the sole issue before the court was whether the defendant-company breached the CBA by refusing to arbitrate three grievances concerning the company's refusal to pay certain sick-pay benefits.  The union and defendant-company were parties to a CBA and a separate Disability Benefits Plan, which was incorporated into the CBA.  The *Amoco* court began its analysis by examining the relevant provisions of

---

[42] Rec. Doc. 12-4, p. 32.
[43] Rec. Doc. 10-1, p. 8. *Local Union No. 4-449 Oil, Chemical, and Atomic Workers Union, AFL-CIO v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979)(hereinafter "*Amoco*").
[44] *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; United Steel Workers Local Union No. 13-227*, 765 F.3d 396 (5th Cir. 2014)(hereinafter "*Houston Refining*").

the CBA and the Plan.  Article VIII of the CBA contained the following provision which provided for the payment of sickness and disability benefits:

> Benefits with respect to sickness and disability *shall* be payable *in accordance with the Company's Sickness and Disability Benefits Plan as presently in effect* except that an employee will be paid holiday pay in place of sick leave pay for a holiday falling on a normally scheduled day of work, but which normally would not have been worked by the employee.[45]

Section IX of the Disability Benefits Plan (Plan) Section IX of the Disability Benefits Plan (Plan) provided that:

> The decision of the Board of Directors of the Company on any matter concerning the administration of this plan as a whole or as applied to any specific case *[s]hall be final and the Board reserves the right to interpret, apply, amend or revoke this Plan at any time.*[46]

The union argued that its grievances regarding sick pay benefits "must be arbitrated since there [was] no express exclusion of sick pay benefits from arbitration in the [CBA]."[47]  The *Amoco* court held otherwise.  In its reasoning, the court made the initial observation that Section IX of the Plan clearly "states that the Board reserves the right to interpret and apply the Plan, and that the decision of the Board will be final."[48]  Considering that the CBA incorporated the Section IX of the Plan's language, the court found that it was "clear … that questions concerning sickness and disability benefits should be presented to the Board, whose decisions would be final."[49]  Hence, the *Amoco* court concluded that the process for addressing problems concerning sickness

---

[45] *Amoco*, 589 F.2d at 163 (emphasis added).
[46] *Id.*(emphasis added).
[47] *Id.* at 164.
[48] *Id.*
[49] *Id.*

and disability benefits, as expressly constructed by the CBA and the Plan, "sufficiently exclude[d] arbitration for grievances concerning sickness and disability benefits."[50]

Recently, in *Houston Refining*, the Fifth Circuit revisited its *Amoco* decision.[51]  In *Houston Refining*, the CBA provided that employees could participate in various benefit plans including a 401(k) plan, that would be "administered by the Benefits Administrative Committee," and that "'the Company [would] provide advance notice of proposed changes to the benefit plans', after which the Union [would] have '[a] reasonable time period … to elect inclusion in or exclusion from the amended benefits plan.'"[52]  In the throes of bankruptcy, the company unilaterally eliminated its matching contributions to the union employees' 401(k) plans.  The union challenged the company's actions and an arbitrator found in the union's favor.  In moving to vacate the award, the company argued that the arbitrator had exceeded his authority because the company's unilateral suspension of the 401(k) Plan did not concern wages, and any dispute relating to the Plan did not fall under the CBA's arbitration clause.[53]

While the Fifth Circuit did not reach the issue of arbitrability, remanding it instead to the district court, it explained its disagreement with the dissenter, who would have vacated the arbitral award on the grounds that the arbitrator exceeded his authority because the term wages in the CBA's arbitration clause cannot encompass the dispute over the 401(k) match suspension.[54]

In its analysis, the *Houston Refining* court suggested that the current state of the law for determining whether a grievance is arbitrable could be summarized as follows:

---

[50] *Id.*
[51] *Houston Refining,* 765 F.3d 396 (5th Cir. 2014).
[52] *Id.* at 399.
[53] *Id*, at 411.
[54] *Id.*

27779                                                                 11

> A dispute is arbitrable if the dispute concerns a direct violation of a right *under the CBA*, rather than a challenge to a determination of an employee's eligibility for benefits *under the benefits plan*. This principle recognizes the importance of the **source of the disputed right**, and, furthermore, prevents clashes between arbitration and disputes governed by the Employee Retirement Income Security Act (ERISA).[55]

The *Houston Refining* court also distinguished its decision from *Amoco*.

First, the court noted that, unlike *Amoco*, the union's grievance in *Houston Refining* did not involve a challenge to the denial of benefits under a 401(k) plan, which would have fallen within the express purview of the company's benefits committee, that had been charged with administering and interpreting the 401(k) Plan. Instead, the union's grievance alleged that the company's procedure for amending the 401(k) plan---a unilateral amendment---violated its obligation under the 2006 CBA. The court reasoned that, "[h]ad [the] Union members sought to enforce their rights under the 401(k) Plan, then the [benefits] Committee could certainly 'interpret and apply' that Plan," taking it out of the purview of the CBA's grievance and arbitration process.[56] However, the company had not offered any evidence showing that the committee, in the course of administering the 401(k) Plan, could determine whether the Plan had been lawfully amended. Therefore, the Fifth Circuit concluded that, if a valid arbitration clause did in fact exist, then the CBA's arbitration clause would be "susceptible of an interpretation that would not bar arbitration of this dispute."[57]

As discussed in *Houston Refining*, this case hinges on the Court's determination of the "source of the disputed right."[58] In the 2013 CBA, the parties agreed in Article

---

[55] *Id.* at 415 (emphasis added). The court explained that it "must ask whether any interpretation [of the CBA] could bring this dispute within the ambit of the arbitration clause."
[56] *Id.* at 414.
[57] *Id.* at 415.
[58] *Id.*

XXXII.C to "amend the current 401(k) to provide that effective in 2014 [Oxbow] will match fifty percent (50%) of the employees' eligible contributions up to maximum of ten percent (10%) of salary."[59] Contrary to Oxbow's strained position otherwise, the Union's grievance is not a direct challenge to union member benefits under the 401(k) Plan. Instead, the Union's grievance is a direct challenge to the proper interpretation and application of Article XXXII.C of the 2013 CBA.  As in *Houston Refining*, the Union is seeking to enforce Oxbow's obligation under the 2013 CBA to provide for specified matching contributions.  Therefore, the Court finds that the source of the disputed right is the CBA.  Accordingly, the Court finds that Oxbow has failed to overcome the presumption of arbitrability, and that the Union's grievance is subject to arbitration under the 2013 CBA.

### IV.    CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[60] filed by Plaintiff, United Steel Workers and its Local 275 is hereby GRANTED, and the *Motion for Summary Judgment*[61] filed by Oxbow Calcining, LLC is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on September 14, 2015.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[59] Rec. Doc. 12-4, p. 36.
[60] Rec. Doc. 12.
[61] Rec. Doc. 10.